# WEBB v. RHODES.

[No. 4,033. Filed October 23, 1901. Rehearing denied February 21, 1902.]

ADVERSE POSSESSION.—*Quieting Title.*—Plaintiff's grantor purchased the east twenty feet of a lot, on which lot two houses had been built by the owner and a fence put up between them, which at the south end was on the true line, but at the north end was three feet and eleven inches west of the true line. There was a barn on the north end of the west part of the lot, the east side of the barn being up to the fence in question. Plaintiff and his grantor ·occupied the inclosure including the strip of ground in dispute for more than twenty years, without question, exercising those ·acts of ownership usually practiced by owners of such land, and ·using it for the purpose to which it was adapted. *Held*, that the possession was adverse and amounted to a grant.

From Marion Superior Court; *J. M. Leathers*, Judge.

Suit by Ella A. Webb against William A. Rhodes ·to quiet title. From a judgment for defendant, plaintiff appeals. *Reversed.*

*C. W. Smith, J. S. Duncan, H. H. Hornbrook, A. Smith, W. W. Spencer* and *E. P. Ferris*, for appellant.

*E. E. Stevenson, W. H. H. Miller, J. B. Elam, J. W. Fesler*, and *S. D. Miller*, for appellee.

ROBY, J.—Action by appellant to quiet title to the east part of lot four in Woods addition to the city of Indianapolis. Appellee disclaimed interest to the east twenty feet of said lot, which leaves in dispute a strip eighty four feet and ten inches long, the length of the lot, three feet and eleven inches wide at the north end, and tapering to a point at the south end. The lot is fifty feet wide. Appellee has a record title to the west thirty feet and appellant has a record title to the east twenty feet. The wedge-shaped strip lies west of the true line dividing said lot as 'aforesaid. Its west boundary is a fence to which appellant claims by reason of adverse possession for twenty years.

The rights of the parties depend upon whether the possession was hostile or not. The court found that it was not. The findings also show that Chas. Haag, appellant's grantor, purchased the east twenty feet of said lot, in 1864, and at once took possession. Prior to that time two houses had been built on the lot, then owned by the same person, and a fence put up between them, which at the south end was on the true line. It was made of boards placed vertically, and nailed to stringers which were fastened to posts, and was substantial. When Haag took possession his lot was inclosed by fences on every side thereof. There was a barn on the north end of the west part of the lot, the east side of the barn being up to the fence in question. He moved into the house and openly used and occupied all the inclosure from that time until he sold it, in 1890, without asking permission of any one. He and his family planted flowers upon the strip in dispute during the spring and summer months from year to year. There was a side walk from the street to the front door of the house, and also along its north side and west end back about forty-five feet. The walk was made of two boards, was fifteen to eighteen inches away from the wall, was from twenty-four to thirty inches wide and fifteen to eighteen inches from the fence on the west side of the inclosure. Within a few years after he took

possession he moved a privy from its former location to one close to the west side of his inclosure and close up against the east end of the barn on the other part of the lot. Such privy remained there until the vault was filled, when it was moved to another portion of the premises, and off the strip in dispute. Less than twenty years before the commencement of the action, he constructed a lattice, with a door in it, from the west side of the house to the dividing fence. After appellee became the owner of the adjoining premises he consulted with Haag about replacing the boards on the south twenty-three feet of the fence with pickets, procured Haag's consent thereto, and his promise to pay half of the cost, made the improvement, and rendered his bill which was paid. The twelfth finding is in terms as follows: "That from the 8th day of June, 1864, the date of his purchase from said Fosdick, until the 28th day of January, 1890, the said Haag, either by residence in person with his family thereon, or by his tenants in possession of said premises, *was in actual, open and notorious, exclusive and continuous possession* of all the premises included within the inclosure extending up to such fence on the west side thereof, but such possession of the disputed strip of ground by Haag or his tenants *was not hostile* to the rights and title of the real owner of the same; nor did said Haag, at any time, except as herein found, do anything whatsoever to show or indicate purpose and intention on his part to claim title to the disputed strip of ground, or any part thereof, adversely to the rightful owner."

To discriminate between ultimate facts, evidentiary facts, and conclusions, is a matter of constant difficulty. *Perkins* v. *Hayward*, 124 Ind. 445, 451. "Possession" is a synonym for "occupancy". It is used in this finding in such sense, and is regarded as an ultimate and competent fact to set out in the verdict. The further finding is that Haag's possession was not hostile. It is argued that the effect of this is overcome by the statements as to the dominion exercised

and the use made by him of it as above set out. That portion of the verdict is regarded as evidentiary. A witness detailing the situation might, and of necessity would, use the same expressions contained in the findings. The test is a recognized one. *Teegarden* v. *Lewis*, 145 Ind. 98, 105.

If treated as properly in the verdict as the basis of a conclusion, with regard to which reasonable men might differ, still, the appellant, not having the necessary finding in his favor that the possession was hostile, is no better off. *Keller* v. *Gaskill*, 9 Ind. App. 670.

Haag's intention is of controlling importance. The question of intention is held to be an ultimate fact. *Belshaw* v. *Chilwood*, 141 Ind. 377, 380. Whether his possession was or was not hostile, or adverse, is an ultimate fact the burden of establishing which rested upon appellant. It follows that the conclusions of law were correctly stated upon the facts found. The facts above stated, except portions of finding twelve, are in accord with the evidence. In addition thereto, Louisa Haag, widow of Chas. Haag, testified as follows: "Q. When you lived on Massachusetts avenue and as long as you lived there on that lot, what did you claim showed the west side of your lot? ' A. We claimed all that was in the fence. Q. There was a fence there all the while you lived there? A. Yes, sir." Upon cross-examination she further stated that there was no discussion or controversy "with the people on the west" about it. This cross-examination does not discredit her first statement. It is not necessary that there be a dispute in order to make the possession adverse or hostile. *Helm* v. *Wilson*, 76 Cal. 476, 18 Pac. 604.

One error assigned is that the court erred in overruling appellant's motion for a new trial. The evidence is without conflict. Its effect must be determined by reference to the following legal propositions: "An entry upon land with the intention of asserting ownership to it, and continuing in the visible, exclusive possession under such claim, exer-

NOVEMBER TERM, 1901—VOL. 28.    397

cising those acts of ownership usually practiced by owners of such land, and using it for the purpose to which it is adapted, without asking permission, and in disregard of all other conflicting claims, is sufficient to make the possession adverse. Such possession, continued for twenty years or more, is equivalent to a grant. *Collett* v. *Board, etc.*, 119 Ind. 27, 34, 4 L. R. A. 321; *Moore* v. *Hinkle*, 151 Ind. 343; *Worthley* v. *Burbanks*, 146 Ind. 534, 543.

The possession of real estate, its use and improvement by one as other persons are accustomed to use and improve their estates, continued for twenty years, without recognizing title in any one else or disclaiming it in himself, raises a presumption of entry and holding as owner, and, "unless rebutted by other evidence, will establish the fact of claim of title." *Dyer* v. *Eldridge*, 136 Ind. 654; *Pittsburgh, etc., R. Co.* v. *Stickley*, 155 Ind. 312.

If Chas. Haag continuously and uninterruptedly, for more than twenty years, occupied said strip of ground up to the fence, claiming to be the owner of it, and that the fence was the dividing line, he thereby acquired an absolute and perfect title in fee to such land. *Riggs* v. *Riley*, 113 Ind. 208, 213; *Brown* v. *Anderson*, 90 Ind. 93; *Main* v. *Killinger*, 90 Ind. 165; *Richwine* v. *Presbyterian Church*, 135 Ind. 80; *Cleveland* v. *Obenchain*, 107 Ind. 591; *Wingler* v. *Simpson*, 93 Ind. 201.

"The possession of land can not be more than the exercise of exclusive dominion over it." What more could have been done by Haag to indicate exclusive dominion over the strip in question than he did? To cultivate land during the spring and summer months from year to year; to use it as a way over which to enter one's dwelling; to lattice across denying access except through a private door; to put an out house on it and keep it there until the vault filled up, all without apology or license, are acts indicating a claim of ownership. They are in perfect accord with the statement of Louisa Haag, which is not only without contradiction, but

manifestly in keeping with the circumstances. It is inferable that the adjacent owners regarded the fence as marking the line between their respective properties; otherwise the action of appellee in obtaining the consent of Haag to its repair, and procuring him to pay half the cost, is inexplicable, or at least unexplained. The location of the barn with regard to it, and the fact that on Massachusetts avenue it was correctly placed, all tend to show that the parties believed for a long time that the fence stood on the true line.

The finding of the court that Haag's possession was not hostile is unwarranted. The appellee does not come here with any equity in his favor. "The statute protects the occupant, not for his merit, for he has none, but for the demerit of his antagonist in delaying the contest beyond the period assigned for it, when papers may be lost, facts forgotten, or witnesses dead." 3 Washburn Real Prop. (5th ed.), 170 *499.

Judgment reversed, with instructions to sustain motion for new trial and further proceedings in accordance herewith.