## MAYER v. C. P. LESH PAPER COMPANY.

[No. 6,844.    Filed November 16, 1909.    Rehearing denied January 28, 1910.]

1. TRIAL.—*Special Findings.—Omissions.—Burden of Proof.*—The plaintiff has the burden of proving the allegations of his complaint, and if the special findings fail to set out the facts necessary to a recovery by the plaintiff, the defendant is entitled to judgment.  p. 251.

2. ADVERSE POSSESSION.—*Basis of.*—Title by adverse possession imports no merit in the possessor, but demerit in the rightful claimant for dereliction of duty in asserting his claim.  p. 253.

3. BOUNDARIES.— *Location.— Special Findings.*— Special findings that a purchaser "supposed the fence was on the line" and that such purchaser intended to claim such fence adversely to the adjoining proprietor, do not show that such fence was the boundary line.  p. 253.

4. VENDOR AND PURCHASER.—*Sales of Lot Covered by Portion of Building.—Easement.—Special Findings.*—Special findings showing that a vendor sold a lot of ground upon which a portion of a house was situated, are not sufficient to warrant a conclusion of law that the purchaser took the lot subject to a reservation of the right to continue the use thereof by such owner of the house, there being nothing to show the character or condition of the house.  p. 253.

5. TRIAL.—*Special Findings.—Evidentiary Facts.—When Sufficient.* —Where the findings set out evidentiary facts admitting of but

one conclusion as to the ultimate fact to be proved, such fact will be considered as proved, but if doubt exists as to the proper inference, the party upon whom the burden of proving such fact rests, will fail.  p. 255.

6. ADVERSE POSSESSION.—*Special Findings.—Omissions.*—Where plaintiff relies for title upon adverse possession, and special findings fail to show such possession, he cannot recover.  p. 255.

From Superior Court of Marion County (71,836) ; *Vinson Carter*, Judge.

Suit by Leopold Mayer against the C. P. Lesh Paper Company.  From a judgment for defendant, plaintiff appeals. *Affirmed.*

*W. P. Herod*, for appellant.

*Clifford & Moffett* and *William L. Taylor*, for appellee.

ROBY, P. J.—Suit for an injunction to restrain appellee from tearing down a fence and cutting off the corners of two buildings, and for damages.  An answer of general denial was filed to the two paragraphs of complaint.  A special finding of facts was made and conclusions of law stated thereon in the defendant's favor.  A motion for a new trial was overruled, and this appeal is taken from a judgment following the conclusions.  The evidence is not in the record, and the correctness of the conclusions of law upon the facts found is the only question for decision.  The appellant was the plaintiff.  Had no evidence been introduced he would have failed.  The burden of proof was therefore upon him, and in order that he may have conclusions in his favor, the special verdict must contain findings upon which they can rest.

The special findings cover approximately nine typewritten pages of the record.  The controversy relates to the location of the boundary between lots four and five in block seventy-three in the city of Indianapolis, which covers the triangle formed by Kentucky avenue, Capitol avenue and Georgia street.  The court finds, among other things, that there are now no monuments existing for fixing the corners of the

original survey of said square. The finding does not show any special survey of said square. It does show that in July, 1906, the appellee, after purchasing lot four therein, procured surveys of said lot by two different persons; that the survey made by one of said persons found a surplus on Kentucky avenue of two and seventy-five one-hundredths feet and a surplus on Georgia street of one and fifty-four one-hundredths feet; that the other surveyor found a surplus on Kentucky avenue of one and sixteen one-hundredths feet and on Georgia street of ninety-five one-hundredths of a foot, and a surplus on Capitol avenue of two inches. It is also found that two competent civil engineers, appointed by the court to make a survey of the lot in controversy, found a surplus on Georgia street of one foot, three and three-quarter inches, and on Kentucky avenue of one foot and nine and one-quarter inches; that lot five was improved by having houses thereon, fronting on both Kentucky avenue and Georgia street; that said buildings were erected on said lots prior to 1863, and that prior to 1860 a fence was erected between the houses that had theretofore been erected on lots four and five, fronting on Georgia street. The finding does not show by whom said fence was erected, but that it extended north a distance of seventy-four feet, nine inches; that it had been from time to time repaired by the owner of that part of lot five, west of said fence; that said fence had, either in whole or in part, been rebuilt since its first erection; that in each instance of rebuilding it was rebuilt as near as practicable upon the same line on which the original fence was located; that it is only partly remaining, a portion of each end being gone; that as it now stands and as originally erected its south end was a distance of seven inches and its north end a distance of thirteen and one-half inches east "of the line dividing said lots."

The wisdom of the law as conclusively settled in this State is exemplified by the facts disclosed in this controversy.

Here is a tract of land of small dimensions, the monu-
2. ments for fixing the corners of which no longer exist.

Three separate unofficial surveys produce different
results. Boundaries fixed by adverse and continued posses-
sion for twenty years are at least capable of definite ascer-
tainment. The doctrine is stated in the case of *Sailor* v.
*Hertzogg* (1845), 2 Pa. St. 182, and quoted with approval
in 3 Washburn, Real Prop. (5th ed.), *499, as follows:
"The statute protects the occupant, not for his merit, for he
has none, but for the demerit of his antagonist in delaying
the contest beyond the period assigned for it." And see
*Webb* v. *Rhodes* (1902), 28 Ind. App. 393.

Appellant contends that he is entitled to a conclusion of
law in his favor as to the land west of the fence on the south
end of the line in dispute. He supports this claim by
3. reference to the case of *Richwine* v. *Presbyterian
Church* (1893), 135 Ind. 80, overlooking the fact that
what was there said was said in the consideration of evidence.
It might be that the evidentiary facts stated would have
justified a finding by the court in his favor, but no such
finding was made, and it cannot be said from a finding that
"she supposed the fence was on the line," and that she in-
tended to claim such fence adversely to the adjoining pro-
prietor. Many facts might exist showing a contrary inten-
tion. The finding is therefore insufficient to warrant a
conclusion of law for appellant as to this part of the case.
*Webb* v. *Rhodes, supra.*

A further question is presented as to the north part of said
line. It is found that, from 1860 until her death in 1889,
Mary Gulliver and her husband and grantor were the
4. owners of lot four and the north part of lot five;
that prior to 1862 she or her husband erected a dwel-
ling-house on lot five fronting Kentucky avenue, occupying
it until her death in 1889; that after that time her ad-
ministrator sold lot four to appellee's grantor; that after-

ward said administrator sold the adjoining part of lot five to the plaintiff's grantor; that the house has remained in the same place for thirty-five years; that appellee proceeded to cut off so much of it as it claimed was on the east side of the boundary line. Appellant invokes the doctrine stated as follows: "Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severence is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severence of such ownership, whether by voluntary alienation or by judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use." *John Hancock Mut. Life Ins. Co.* v. *Patterson* (1885), 103 Ind. 582, 586, 53 Am. Rep. 550. See, also, *Allen* v. *Kersey* (1885), 104 Ind. 1, 4; *Lammott* v. *Ewers* (1886), 106 Ind. 311, 315; *Ellis* v. *Bassett* (1891), 128 Ind. 118, 120, 25 Am. St. 421; *Steinke* v. *Bentley* (1893), 6 Ind. App. 663, 670.

Had the common owner first sold that part of lot five upon which the dwelling-house stood, the purchaser thereof would have, as against him and his subsequent grantees, a much stronger claim than exists. "There is a difference in the authorities as to just how far this rule ought to be extended in favor of a grantor who has failed expressly to reserve any rights in his deed." *Steinke* v. *Bentley, supra.* "The application of the rule must depend upon the nature, arrangement and use of the estate, the relation of the parts to each other, and the existing degree of necessity for giving such construction to the grant as will give effect to what may be supposed to have been, considering the manner of the use and the reasonable intendment of the parties; the underlying principle in such cases being that, included in the grant of the principal, are all such privileges and appurtenances as are obviously incident and reasonably necessary to the fair enjoyment of the thing granted, substantially in the condition to which it is enjoyed by the grantor, unless the contrary

is provided.'' *John Hancock Mut. Life Ins. Co.* v. *Patterson, supra.* The mere fact that a house thirty-five years old was in part upon land conveyed by the owner comes very far short of the condition required for the application of the doctrine relied upon. The building may be of inconsiderable value and its replacement by a modern structure may have been in the contemplation of both parties to the sale. The building is not described, and the necessity for its protection to secure the fair enjoyment of the premises is not shown. The verdict does not bring the facts within the law relied upon, and the judgment is therefore affirmed.

## On Petition for Rehearing.

Roby, J.—Where evidentiary facts stated in a special finding are such that but one inference can be drawn from them, the absence of the statement of the ultimate fact will not prevent the court from drawing the unavoidable inference; but when such evidentiary facts leave room for difference of reasonable opinion, the party having the burden of proof must fail. *Indiana Trust Co.* v. *Byram* (1905), 36 Ind. App. 6.

The findings in this case do not show an adverse possession. The decision in this case is that the special findings do not show an adverse holding for twenty years. Had the court stated such ultimate fact, an altogether different aspect would be given to the finding. *Webb* v. *Rhodes* (1902), 28 Ind. App. 393.

The petition for rehearing is overruled.