## SCHWARTZ ET UX. *v.* HOLYCROSS ET AL.

[No. 12,030.   Filed November 25, 1925.]

1. INJUNCTION.—*Person is not entitled to an injunction as matter of right.*—Even though the right to an injunction is clear, it does not follow that it will be granted, as a decree granting an injunction is of grace and not of right.   p. 663.

2. EQUITY.—*Court of equity is not willing to grant relief against conscience or public convenience.*—A court of equity is never active in granting relief which is against conscience or public convenience.   p. 663.

3. INJUNCTION.—*Courts are more reluctant to grant mandatory than prohibitory injunctions.*—Although the principles upon which mandatory and prohibitory injunctions are granted do not materially differ, courts are more reluctant in granting the mandatory writ.   p. 664.

4. INJUNCTION.—*Courts refuse to grant a mandatory injunction where no appreciable damages, and writ would require performance of a difficult or expensive act.*—Courts refuse to grant a mandatory injunction where there is no appreciable damage and where the writ would require the performance of an act which would be difficult and which would involve considerable expense.   p. 664.

5. INJUNCTION.—*Mandatory injunction should be granted only when its refusal would work serious hardship or injustice.*—A mandatory injunction should be granted only when the situation so clearly calls for it as to make its refusal work real and serious hardship and injustice.   p. 665.

6. DEEDS.—*Owner selling off tract of ground in lots, with restrictions in all deeds as to the use of said lots according to a general plan, loses right to enforce restrictions as to one grantee when he permits others to violate it so as to abrogate the general plan.*—Where the owner of a tract of land sells it off in lots, with restrictions on the use thereof, he will lose his right to enforce such restrictions against one grantee if he has permitted other grantees to violate the same restric-

tions, the effect of such violation being to abrogate the purpose of the restrictions and alter the general scheme intended to be conserved by them, and this rule is applicable whether suit is brought by the original grantor or by one of his grantees. p. 665.

7. INJUNCTION.—*To obtain mandatory injunction to protect restrictive building covenants involved in a general scheme, application must be promptly made and the common scheme must have been preserved.*—To obtain mandatory injunction to protect building covenants involved in a general scheme, two rules are applied with great strictness, viz.: the application must be promptly made and the common scheme must have been actually preserved. p. 665.

8. INJUNCTION.—*Equity may enjoin violation of restrictive building covenants and mandatory injunction may issue to compel modification, or even removal, of building erected in violation thereof.*—Equity may enjoin the violation of restrictive building covenants when a part of a general scheme of a subdivision or other general building program, and a mandatory injunction may be issued to compel the modification, or even the removal, of a building erected in violation of such covenants. p. 667.

9. INJUNCTION.—*Refusal of mandatory injunction requiring the modification of building erected in violation of building restrictions held not reversible error.*—Since the granting of a mandatory injunction is a matter of grace, resting in the sound discretion of the court, the action of the court in refusing to issue writ requiring the defendants to modify their building on a lot adjoining that of plaintiffs so as to comply with restrictive covenants in the deeds to their respective grantors will not be reversed where plaintiffs have suffered no substantial injury by the manner of constructing the building, even though a violation of a general building scheme in the subdivision in which the lots were located. p. 673.

10. APPEAL.—*Appellate tribunal, finding action of court in refusing mandatory injunction justified, will not reverse judgment to allow trial court to assess defendants' damages where not requested below.*—On appeal from the refusal of the trial court to grant a mandatory injunction requiring the defendants to modify a building erected in violation of restrictive building covenants, the appellate tribunal, finding the action of the court was justified, will not reverse the judgment and direct the trial court to assess defendants' damages for the violation of such covenant, where no such request was made of the trial court. p. 673.

From St. Joseph Superior Court; *Lenn J. Oare,* Judge.

Suit by Louis M. Schwartz and another against Albert William Holycross and others for a mandatory injunction. From a judgment for defendants, the plaintiffs appeal. *Affirmed.* By the court in banc.

*D. D. Nemeth* and *Walter R. Arnold,* for appellants.
*Lewis W. Hammond* and *George W. Omacht,* for appellees.

McMahan, J.—Complaint to enjoin appellees from erecting and maintaining a building upon a certain lot in the city of South Bend in violation of the restrictions in a deed to appellees' immediate grantor, and in violation of a zoning ordinance of said city. The facts were found specially and are, in substance, as follows:

Edgewater Place Addition in South Bend was platted by Whitcomb and Keller in 1919. In October, 1921, they conveyed lot 57 in said addition to Thomas and Emma Lee, by a warranty deed containing the following provisions:

"Grantees agree and bind themselves, their heirs and assigns that they will not move any buildings on said premises and will not erect or permit to be erected any building thereon except one dwelling for a residence for one family, and a garage for private purposes, and that said dwelling will not cost less than Four Thousand Dollars. Grantees further agree that they will maintain a lawn space between said dwelling, not including an open porch, and the front line of said lot of not less than 30 feet, and that they will not erect said dwelling less than 3 feet from either side of said lot. All restrictions and conditions herein contained shall be valid and binding and continue in force until January 1, 1945, provided however that such conditions and restrictions or any of them may be changed or abolished in any or all particulars by the owners of the lots in Edgewater Place whenever two-thirds of the owners unite in sign-

ing and executing an agreement or resolution to that effect, which agreement or resolution shall thereupon be recorded in the proper records in the Recorder's office of St. Joseph County, Indiana, and be valid and binding upon the sellers and owners of said lots and upon all other persons."

Said deed was recorded November 3, 1921. In September, 1922, Lee and Lee sold, and by warranty deed without any restrictive covenants, conveyed said lot 57 to Albert and Viola Holycross hereafter designated "appellees." When this action was commenced, appellants were the equitable owners of lot 56 in said addition under a contract of purchase from Whitcomb and Keller, containing the same restrictions as are contained in said deed to Lee and Lee. Said lots are contiguous to each other and are thirty feet wide fronting on River avenue. In June, 1923, the common council of South Bend enacted a zoning ordinance, which, in so far as it affects these lots, provides that no building shall be erected thereon less than twenty-five feet from the street, and that there be a yard of not less than three feet on each side of the building. On September 10, 1923, appellees began the erection of a dwelling house on lot 57. The foundation of said house at its nearest point, exclusive of the porch, is 29 feet from the street line. Its nearest point to the line between lots Nos. 56 and 57 is twelve inches. The part of the house constructed nearest to the line of appellants' lot consists of a brick chimney five feet wide and which projects four inches from an alcove nine feet wide and sixteen inches distant from the line of lot 56. Said chimney and alcove are sixteen and fourteen feet respectively in height, but do not interfere with light or air to appellants' property.

On October 6, 1923, appellees commenced the construction of the alcove and chimney by putting in the

foundation therefor, and on that day built the side walls of the alcove out of boards and studding to a height of about five feet and the chimney to a height of four feet. Appellants had no knowledge that appellees were erecting this house until October 6, on which day, they notified the building commissioner of said city that said building was being constructed in violation of said ordinance. On October 7, appellees received a letter from the building commissioner calling attention to the fact that the building was being constructed nearer the side line of the lot than permitted by the ordinance and that he would be required to make the building comply with the ordinance. On that same day, appellees visited appellant Louis M. Schwartz, and offered to buy three feet off of the side of lot 56. Schwartz refused to sell and told appellees they must stop work on the building in the manner in which it was being done, but told them they could proceed in that manner if they paid appellants $200. There is no building on lot 56, except a two-car garage on the rear end, and appellants have no definite plans for the erection of a dwelling thereon. Construction of said house by appellees was completed October 30, and when constructed had an open brick porch facing River avenue, twenty-two feet distant from lot 57, the nearest point to River avenue being sixteen feet. No serious or substantial injury to appellants' property is shown to have been suffered by appellants and no serious or substantial injury to said property is threatened by the manner in which said building has been constructed and there is no evidence of any pecuniary damage to appellants by reason of the construction of said building. Upon these facts, the court concluded that the mandatory injunction should be refused and that appellants take nothing.

The questions presented for our consideration relate to the correctness of the conclusions of law. Appellants

insist that under the facts as found they were
1.    entitled to a mandatory injunction requiring ap-
pellees to modify their building so as to comply
with the restrictive covenants of the deed as set out
in the special finding.    This contention is based upon
the theory that appellants, under the facts, are entitled
to a mandatory injunction as a matter of right.    But,
as was said by the court in *Chartiers, etc., Co.* v. *Mellon*
(1892), 152 Pa. 286, 25 Atl. 597, 18 L. R. A. 702, 34
Am. St. 645, appellants, "have appealed to us as chan-
cellors, and even if we concede their right to be clear,
it does not follow that as chancellors we will enforce
it.   *   *   *   It is a familiar law, too familiar to need
the citation of authority, that the decree of a chan-
cellor is of grace, not of right, and that he is not bound
to make a decree which will do far more mischief and
work far greater injury than the wrong which he is
asked to redress."    "Where," said the United States
Court of Appeals in *Kryptok Co.* v. *Stead Lens Co.*
(1911), 190 Fed. 767, 111 C. C. A. 495, 39 L. R. A. (N.
S.) 1, "the injury to the applicant if the preliminary
injunction is refused will probably be greater than the
injury to the opponent if it is granted it should be is-
sued, while if the contrary is the probable result the
application for it should be denied."

A court of equity is never active in granting relief
which is against conscience or public convenience.    See
*Fesler, Clerk,* v. *Brayton* (1896), 145 Ind. 71,
2.    where at page 84, 44 N. E. 37, at page 41 (32
L. R. A. 578) it is said:    "Nor ought the process
of injunction to be applied but with the utmost caution.
It is the strong arm of the court, and to render its
operation benign and useful, it should be exercised with
great discretion, and only upon necessity."

The principles upon which mandatory and prohib-
itory injunctions are granted do not materially differ.

Courts are, however, more reluctant in granting

3.  the mandatory writ.  *Allen* v. *Stowell* (1905), 145 Cal. 666, 79 Pac. 371, 104 Am. St. 80, 68 L. R. A. 223; *Atchison, etc., R. Co.* v. *Long* (1891), 46 Kans. 701, 27 Pac. 182, 26 Am. St. 165; *Stewart* v. *Fickelstone* (1910), 206 Mass. 28, 92 N. E. 37, 28 L. R. A. (N. S.) 634, 138 Am. St. 370.

In *Attorney General* v. *Algonquin Club* (1891), 153 Mass. 447, 27 N. E. 2, 11 L. R. A. 500, where the defendant had violated a restrictive covenant in a deed, a mandatory injunction was issued, the court, however, in the course of its opinion, called attention to the fact that the violation was deliberate, the injury one not easily measurable in money and it did not appear that the injury was trifling or substantial so as to bring the case within the maxim *de minimus,* a maxim of frequent application in this state where the court has refused to reverse because of the failure to assess nominal damages.

Courts have refused to grant the mandatory writ where there is no appreciable damages and where the writ would require the performance of an act

4.  which would be difficult and which would involve a considerable expense.  *Harrington* v. *McCarthy* (1897), 169 Mass. 492, 48 N. E. 278, 61 Am. St. 298; *Lynch* v. *Union Institution* (1893), 159 Mass. 306, 34 N. E. 364, 20 L. R. A. 842.  As was said in the case cited last:  "The doctrines applied by the courts of equity in cases of this kind call for a consideration of all the facts and circumstances which help to show what is just and right between the parties."

In *Jackson* v. *Stevenson* (1891), 156 Mass. 496, 31 N. E. 691, 32 Am. St. 476, where the character of the locality had changed from a residential to a business district, a mandatory injunction was refused, and, on the report of the master that the plaintiff was entitled

to damages, there being no finding that the damages were merely nominal, jurisdiction was retained for the purpose of assessing the damages.

Equitable relief by way of a mandatory injunction is, and for the most obvious reasons should be granted only in situations which so clearly call for it as 5. to make its refusal work real and serious hardship and injustice. *Lyons* v. *Walsh* (1917), 92 Conn. 18, 101 Atl. 488, L. R. A. 1917F 680. "A mandatory injunction, like mandamus, is an extraordinary * * * process which is granted, not as a matter of right but in the exercise of a sound judicial discretion." *Morrison* v. *Work* (1924), 266 U. S. 481, 45 Sup. Ct. 149, 69 L. Ed. 304.

Where the owner of a tract of land sells the same off in lots, with restrictions upon the use of the lots sold, he will lose his right in equity to enforce the 6. restrictions against one grantee, if he knowingly has permitted other grantees to violate the same restrictions, the effect of which violation is to abrogate the purpose of the restriction and alter the general scheme intended to be conserved by it. This rule is applicable whether the suit is brought by the original grantor or by one of the several grantees of land sold in accordance with the general scheme of the original grantor. *Ocean City Assn.* v. *Chalfant* (1903), 65 N. J. Eq. 156, 55 Atl. 801, 1 Ann. Cas. 601. See *Wallack Const. Co.* v. *Smalwich Realty Corp.* (1922), 194 N. Y. Supp. 32.

In actions for mandatory injunctions to protect restrictive building covenants, courts of equity have laid down two rules and applied them with great 7. strictness: (1) The application must be promptly made; (2) the common scheme of building must have been actually preserved. *Zelman* v. *Kaufherr* (1909), 76 N. J. Eq. 52, 73 Atl. 1078.

In *Willock* v. *Arensberg* (1912), 51 Pa. Super. Ct. 73, the court in discussing this question said: "It is not every purely technical violation of a covenant or duty that a court sitting in equity will enjoin. There must be some substantial injury, as stated in Richards' App., 57 Pa. 105, 'It is elementary law, that in equity a decree is never of right, as a judgment at law is, but of grace. Hence the chancellor will consider whether he would not do a greater injury by enjoining than would result from refusing, and leave the party to his redress at the hands of a court and jury.' * * * Conceding all that is urged by the appellant as to the facts, and the binding force of the covenant, the suggested injury is so trifling and indefinite that the extraordinary relief he seeks should be denied him." See *Mint Realty Co.* v. *Wanamaker* (1911), 231 Pa. 277, 79 Atl. 514.

It is to be observed there is no finding that the owners of the property in subdividing and selling the same did so with a general building scheme in mind although there is an allegation in the complaint to that effect. There is no finding that any of the lots other than the two sold to the parties to this action were sold in accordance with such scheme or that the deeds to such other lots contained any restrictions as to the character or location of buildings that might be constructed thereon. The court, however, does find that more than twenty-five per cent. of the houses on River avenue, in the block where appellants' lot is located, do not comply with the building covenant in the deed to appellees' grantors, Lee and Lee, in that, such houses are located within thirty feet of the front line of the lots. Neither the number of such houses nor their location with reference to appellants' lot is disclosed. "If the covenant is silent; if there is no mutual agreement or understanding between the various owners creating an easement; if there is nothing in the surrounding

circumstances from which mutual rights can be fairly inferred, then no action can be maintained." *Equitable Life Assur. Soc.* v. *Brennan* (1896), 148 N. Y. 661, 43 N. E. 173. See *Korn* v. *Campbell* (1908), 192 N. Y. 490, 85 N. E. 687, 37 L. R. A. (N. S.) 1, 127 Am. St. 925. We will, however, assume that the facts found are sufficient to force the inference that Whitcomb and Keller, as owners and subdividers of the property, sold said lots 56 and 57 and inserted the building restrictions in the deed and contract as a part of a general building scheme, and that such restrictions were inserted for the benefit, not only of the original owners, but for the purchasers of the several lots in the subdivision. This inference must arise, if at all, from the language used in the deed to Lee and Lee and in the contract to appellant, as there is not a scintilla of evidence other than that the deed and contract contain restrictions that would be appropriate to use in deeds made to carry out a general building scheme, and this in the face of a possibility that such language might also be used in a deed not made for the purpose of carrying out such scheme. See *Indiana Trust Co.* v. *Byram* (1904), 36 Ind. App. 6, 72 N. E. 670, 73 N. E. 1094; *Judah* v. *F. H. Cheyne Electric Co.* (1913), 53 Ind. App. 476, 101 N. E. 1039; *Young* v. *Berger* (1892), 132 Ind. 530, 32 N. E. 318; *Mayer* v. *C. P. Lesh Paper Co.* (1909), 45 Ind. App. 250, 89 N. E. 894, 90 N. E. 651; *Mount* v. *Board, etc.* (1907), 168 Ind. 661, 80 N. E. 629, 14 L. R. A. (N. S.) 483; *Harris* v. *Riggs* (1916), 63 Ind. App. 201, 112 N. E. 36.

It is well settled that a court of equity has the power and jurisdiction to enjoin the violation of restrictive building covenants such as are involved in this 8. case, and that a mandatory writ may be issued to compel the modification, or even the removal of a building erected in violation of such covenants.

In *Evans* v. *Foss* (1906), 194 Mass. 513, 80 N. E. 587, 9 L. R. A. (N. S.) 1039, 11 Ann. Cas. 171, the owner of three large parcels of land conveyed the same to trustees who subsequently conveyed one of the tracts in separate parcels, by several deeds to three purchasers, one part of which was conveyed to one Fairchild, under whom both Evans and Foss derived their titles. The deeds under which they claimed title contained certain restrictions as to the character of buildings to be erected thereon and prohibiting the use of such buildings for certain purposes. Substantially the same restrictions were placed in the deed from the original owner to the trustees, and in each of the three deeds from the trustees when they conveyed to Fairchild and others. When the land conveyed to Fairchild was subdivided into building lots, the same restrictions were inserted in the deeds to the several lots and were continued in the conveyances thereafter made. The court on appeal, after calling attention to the fact that the trial court had found that the restrictions in the deed from the trustees to Fairchild were in "furtherance of a general scheme for the improvement of the granted property and that the same were imposed to benefit the parcels conveyed," said: "It is a familiar principle of law, which has been applied in many cases, that when one makes deeds of different portions of a tract of land, each containing the same restriction upon the lots conveyed, which is imposed as a part of a general plan for the benefit of the several lots, such a restriction not only imposes a liability upon the grantee of each lot as between him and the grantor, but it gives him a right in the nature of an easement, which will be enforced in equity against the grantee of one of the other lots, although there is no direct, contractual relation between the two. Through the common character of the deeds the grantees are given an interest in a contractual stipu-

lation which is made for their common benefit." The court, however, recognized that there might be such a change in conditions as would preclude a court of equity from enforcing such restrictions.

In *Spilling* v. *Hutcheson* (1910), 111 Va. 179, 68 S. E. 250, Mrs. Hutcheson, being the owner of a block of land in the city of Richmond which she had dedicated for residential purposes, sold one of the lots to Spilling. The deed contained a provision that the building line of the block should be twenty-five feet from the street and that the front wall of the building should be set back at least twenty-five feet from the street. Soon thereafter the purchaser erected a three story brick residence therein, with bay-windows on the first and second stories extending over the building line about four feet, and with a porch extending over the building line ten feet. It was there held that the plaintiff was entitled to a mandatory injunction to require the defendant to conform the building to the building line by removing the bay window, but not as to the porch.

In *Bryant* v. *Whitney* (1918), 178 Cal. 640, 174 Pac. 32, where building restrictions on twenty-eight lots, comprising part of a general improvement scheme, were violated by the owners of seven of the lots, and the enforcement of the restrictions against the defendant would not tend materially to restore the district, and the infractions complained of did not diminish the value of the other lots, and where the infractions consisted, as here, in the erection of a house with one side and a projecting chimney too close to the side of the lot, enforcement of the restriction by injunction was denied. To the same effect see *Loud* v. *Pendergast* (1910), 206 Mass. 122, 92 N. E. 40; *Zelman* v. *Kaufherr, supra.*

In *Equitable Life Assur. Soc.* v. *Brennan, supra,* a tract of land in the city of New York was sold to one Page, who divided it into lots twenty-five by 100 feet

in size.  At the request of Page, ten lots in the west half of the block were conveyed to one Villiard and the remainder of the lots were conveyed to Page.  In the contract between Page and his grantor, it was provided that certain restrictions should be imposed upon the west half.  Page then conveyed part of the east half of the block to Robert and Ogden Goelet with restrictions.  A year later, he conveyed the two westerly lots in the east half to Mrs. Spaulding, with restrictions, and two months thereafter, he conveyed the rest of the east half to one Benson, with restrictions similar to those in the Goelet and Spaulding deeds.  After Page's death, his devisee released Benson's grantee from the restrictions in the deed to Benson, and the defendant Brennan thereafter became the owner by mesne conveyances of the lots conveyed to Benson.  The west half of the block was one of the most desirable residence districts in the city while the east half abutted on a railroad over which many trains passed daily and which was not a desirable place for residences.  The Life Assurance Society, having purchased the Spaulding lots, brought an action to enjoin Brennan from erecting stables on his lots.  It was held that the defendant rested under no restriction in regard to his lots, since the covenants in the several deeds from Page were, on their face, for the benefit of Page alone, and there was nothing to show any uniform restriction on the east half of the block.

*Whitney* v. *Union R. Co.* (1858), 11 Gray (77 Mass.) 359, 71 Am. Dec. 715, belongs to the line of cases where the grantor exacts a restriction or covenant from his grantee for the benefit of contiguous or neighboring lands retained by the grantor.  Mrs. Whitney was originally the owner of a large tract which she subdivided into lots with the intention of selling them to be used and occupied by private dwellings.  She sold one of the

lots to one White with restrictions as to the location of buildings with reference to street, and as to the purposes for which buildings erected thereon might be used. White while owning the lot erected a stable on the lot and kept horses therein for hire and livery against the remonstrance of Mrs. Whitney. The railroad company, having become the owner of the property formerly owned by White, enlarged the stable and was preparing to keep a much larger number of horses, contrary to the restrictions in the deed and to the injury of a lot and dwelling house owned by Mrs. Whitney, and which was within the tract mentioned in the restrictions. In holding that the original grantor by whom the restrictions were created, as owner and occupier of a part of the estate out of which the lands owned by the defendant was carved, and for whose benefit the restrictions were imposed had an interest in their enforcement, and, in referring to the restrictions, the court said: "The purpose of inserting them in the deed is manifest. It was to prevent such a use of the premises by the grantee and those claiming under him, as might diminish the value of the residue of the land belonging to the grantor, or impair its eligibility as sites for private residences. That such a purpose is a legitimate one, and may be carried out, consistently with the rules of law, by reasonable and proper covenants, conditions or restrictions, cannot be doubted. Every owner of real property has the right so to deal with it, as to restrain its use by his grantees within such limits as to prevent its appropriation to purposes which will impair the value or diminish the pleasure of the enjoyment of the land which he retains. The only restriction on this right is, that it shall be exercised reasonably, with a due regard to public policy, and without creating any unlawful restraint of trade. Nor can there be any doubt that in whatever form such a restraint is placed

on real estate by the terms of a grant, whether it is in the technical form of a condition or covenant, or of a reservation or exception in the deed, or by words which give to the acceptance of the deed by the grantee the force and effect of a parol agreement, it is binding as between the grantor and the immediate grantee, and can be enforced against him by suitable process, both in law and equity." The deed to White having been duly recorded, the railway company was held to have had constructive notice of its stipulations and bound to observe them, but Mrs. Whitney, having stood by and permitted the stable to be erected by White, was refused a mandatory injunction for its removal.

In *Maclary* v. *Morgan* (1918), 230 Mass. 80, 119 N. E. 189, Bowditch, the owner of two tracts of land caused a plat to be made dividing them into lots, after which he sold and conveyed the same to the defendant and Leroy Morgan. The deed from Bowditch to the Morgans provided that no buildings other than private residences for single families and the necessary out-buildings should be erected thereon, and that no building should be erected nearer than twenty feet of the street, nor less than five feet of any boundary. The defendant subsequently purchased Leroy Morgan's interest in certain lots, one of which was contiguous to the lot sold to Maclary, and on which the defendant erected a house in violation of the restrictive provisions of the deed to the plaintiff. All of the houses which had been erected had been built in conformity with the restrictions, except the one erected by the defendant, which was a two-family house and erected within five feet of the line between the lot on which it was located and the lot owned by Maclary which he had purchased from the Morgans. The court found that Maclary as owner of one of the lots was a person for whose benefit the restrictions were imposed and that he was enti-

tled to a mandatory injunction. This was upon the theory that Bowditch, the original owner, had imposed the same restrictions on each of the lots for the protection of his adjoining land and as a part of a general scheme of improvement for the benefit of the several lots. The defendant was enjoined from maintaining his building in violation of the restrictions in the Bowditch deed.

It is not possible to reconcile all that has been said in the cases discussing the subject, but, in view of the fact that the granting of a mandatory injunction is a matter of grace, resting in the sound discretion of the court, and since appellants have suffered no substantial injury by reason of the manner in which appellees' house was constructed, we hold there was no error in the conclusion of law.

Appellants ask, in case we hold they are not entitled to a mandatory injunction, that we reverse the cause with direction to the trial court to retain jurisdiction for the purpose of hearing evidence and assessing their damages occasioned by reason of the location of appellees' house. No such request having been made of the trial court, we decline to reverse the cause for the purpose of assessing damages which, according to the facts found, are merely nominal.

Judgment affirmed.