**CITY OF GARY, INDIANA,**
Appellant–Defendant,

v.

**The MAJESTIC STAR CASINO, LLC,**
the Majestic Star Casino II, Inc. f/k/a
Trump Indiana, Inc., Gary New Century, LLC, Appellees–Plaintiffs,

and

**The Indiana Gaming Commission,**
Appellee–Defendant.

No. 49A02–0807–CV–625.

Court of Appeals of Indiana.

May 14, 2009.

Hamilton Lonnie Carmouche, Merrillville, IN, Attorney for Appellant.

Susan M. Severtson, Carl C. Jones, Gary, IN, Attorney for Appellant, City of Gary, Indiana.

Gregory F. Zoeller, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee, Indiana Gaming Commission.

Peter J. Rusthoven, Paul L. Jefferson, E. Timothy Delaney, Barnes & Thornburg, Indianapolis, IN, Attorneys for Appellee, Majestic Companies.

## OPINION

BROWN, Judge.

In this interlocutory appeal, the City of Gary appeals an order denying the City's motion to transfer venue and an order denying the City's motion for a preliminary injunction to compel Majestic Star Casino, LLC ("Majestic Star I") and the Majestic Star Casino II, Inc. ("Majestic Star II") (collectively "Majestic Star") to make payments from adjusted gross receipts to the City. The City raises two issues, which we revise and restate as:

I. Whether the trial court erred by denying the City's motion for change of venue from Marion County to Lake County where the Indiana Gaming Commission (the "Commission") was named as a defendant in the declaratory judgment action; and

II. Whether the trial court abused its discretion by denying the City's motion for a preliminary injunction.

We affirm.

The relevant facts follow. In 1996, the City and Majestic Star I entered into a development agreement ("Majestic Development Agreement"). That same year, the City and Trump Indiana, Inc., entered into a development agreement ("Trump Development Agreement"). Both of the agreements provided that the developer shall pay the City an amount equal to three percent of adjusted gross receipts for each month in which the developer conducts riverboat gaming operations.

In 1999, the City and Gary New Century, LLC ("GNC") entered into an agreement entitled Assignment of Purchase Agreement and Development Agreement ("GNC Agreement"). The City agreed to

purchase property from the Lehigh Portland Cement Company for $25 million and assigned its rights to GNC. The City agreed to perform demolition and environmental remediation work on the Lehigh property and agreed to build certain infrastructure adjacent to the Lehigh property. GNC agreed to invest fifty million dollars to undertake certain development projects on the Lehigh property.

In 2000, an addendum to the GNC Contract was executed by the City and GNC. In 2004, GNC and Majestic Star I entered into an agreement in which GNC's rights to a portion of the Lehigh property were assigned to Majestic Star I.

In 2005, Majestic Star I purchased the riverboat casino from Trump Indiana, Inc., which casino is now known as Majestic Star II. That same year, a representative of Majestic Star I, a representative of Trump Indiana, Inc., and the City's mayor signed an agreement entitled Amendment Number One to Development Agreement ("the 2005 Amendment"). The 2005 Amendment stated that "the parties to this Amendment desire to make certain modifications related to the Majestic Development Agreement, the Trump Development Agreement and the GNC Development Agreement in light of the passage of time and change in circumstances since the execution of the original Agreements." Appellant's Appendix at 99–100. The 2005 Amendment provided that it amended various portions of the Majestic Development Agreement, the Trump Development Agreement, and the GNC Agreement.

The parties disagree as to the validity and meaning of the 2005 Amendment. The City contests the validity of this agreement because it was never approved by the Board of Public Works. The City also argues that, even if the 2005 Amendment was valid, "it does not make the [adjusted gross receipts payments] condi-tional upon the City's separate obligations regarding the development of the Lehigh Property set forth in the GNC [Agreement]." Appellant's Brief at 8. Majestic Star argues that the City has accepted "millions without protest, for years" under the 2005 Amendment, which is interrelated with the development agreements. Majestic Star's Brief at 15.

In 2008, the Majestic Star I, the Majestic Star II, and GNC filed a complaint in Marion County against the City and the Commission. The complaint alleged that "[b]ecause the City has failed to fulfill its obligations under the GNC Agreement, both as initially entered and as thereafter amended by the 2005 Amendment, and has repudiated the 2005 Amendment, Majestic I and Majestic II are depositing into a segregated, interest-bearing bank account the amounts that would otherwise be paid to the City under the 2005 Amendment (and which the City has previously accepted under the Amendment that it now repudiates), with such segregated amounts to be disbursed thereafter in accordance with a confirmation arbitration award." Appellant's Appendix at 52. The complaint alleged that the City "has refused to comply with and has failed to fulfill its contractual obligations under the GNC Agreement, both as initially entered and as amended by the 2005 Amendment." *Id.* at 54. The complaint requested the trial court to issue a declaratory judgment stating that the Commission will be bound by the results of arbitration. The complaint also requested, "if and to the extent it may be determined in the Arbitration that the issue of whether the City has breached its obligations under the GNC Agreement and the 2005 Amendment is not subject to arbitration, the Majestic Companies request that the Court issue a declaratory judgment that the City has breached such obligations, and award the Majestic Companies all ap-

propriate declaratory and other relief to which they are entitled as a consequence of such breach." *Id.* at 55.

On March 3, 2008, the City filed a motion to transfer for incorrect venue.[1] At the hearing on its motion,[2] the City argued that proper venue was in Lake County because the contract dispute did not inherently involve the Commission and Majestic Star had "no standing over the [ ] Commission." Transcript at 13. On April 11, 2008, the trial court denied the City's motion to transfer.

On March 24, 2008, the City filed a motion for preliminary injunction that apparently sought to compel Majestic Star to resume making the payments from the adjusted gross receipts to the City under the development agreements and to cease depositing those amounts into a segregated account.[3] At a hearing, Mary Celita Green, the Controller for the City, testified that the payments from the adjusted gross receipts average about $600,000 a month. Green testified that the actions of Majestic Star prevented the City from paying overtime for police officers and firefighters and that garbage pickup and medical insurance claims would be affected. Green testified that the City has the capacity to issue general obligation bonds, that the Council approved revenue bonds in the amount of $25 million, and that the City used only $4.8 million.

After the hearing, the trial court denied the City's motion for a preliminary injunc-tion. The trial court concluded that the potential harm identified by the City was purely economic and an adequate remedy existed at law. The trial court also noted that the City has "unused bond-issuance authority of some $20.2 million," which is an alternative means by which to obtain money to cover any budgetary shortfalls. Appellant's Appendix at 37. The trial court also concluded that the City did not show that it has a likelihood of success on the merit s, that the balance of harms favors the denial of a mandatory preliminary injunction, and that the public interest would not be served by the grant of a mandatory injunction.

## I.

 The first issue is whether the trial court erred by denying the City's motion for change of venue. This court may dismiss appeals upon its own motion when it discovers it does not have jurisdiction. *Moser v. Moser,* 838 N.E.2d 532, 534 (Ind.Ct.App.2005), *trans. denied.* An appeal from an interlocutory order is not allowed unless specific authority is granted by the Indiana Constitution, statutes, or the rules of court. *Id.* Moreover, any such express authorization for an interlocutory appeal is "strictly construed." *Id.;* *Schwedland v. Bachman,* 512 N.E.2d 445, 449 (Ind.Ct.App.1987) ("Appeals from interlocutory orders are allowed only when expressly authorized, with such authorization being strictly construed.").

---

1. A copy of the City's motion to transfer venue is not included in Appellant's Appendix. We remind the City that Ind. Appellate Rule 50(A)(2) requires the appellant to include in its appendix the "pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal."

2. We note that pages 41–42 are missing from the transcript.

3. Copies of the City's motion for preliminary injunction and its brief in support of the motion are not included in Appellant's Appendix. We remind the City that Ind. Appellate Rule 50(A)(2) requires the appellant to include in its appendix the "pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal."

Ind. Trial Rule 75 governs venue requirements and provides in part that "[a]n order transferring or refusing to transfer a case under this rule shall be an interlocutory order appealable pursuant to Appellate Rule 14(A)(8); provided, however, that the appeal of an interlocutory order under this rule shall not stay proceedings in the trial court unless the trial court or the Court of Appeals so orders." Indiana Appellate Rule 5(B) provides authority for the Court of Appeals to obtain "jurisdiction over appeals of interlocutory orders under Rule 14." The City states that this court has jurisdiction over the appeal of the venue issue under Appellate Rule 14(A)(8). Appellate Rule 14(A) provides, in relevant part:

Appeals from the following interlocutory orders are taken as a matter of right by filing a Notice of Appeal with the trial court clerk within thirty (30) days of the entry of the interlocutory order:

\* \* \* \* \*

■ (8) Transferring or refusing to transfer a case under Trial Rule 75;

The order denying the City's motion to transfer venue is dated April 11, 2008. The City did not file its notice of appeal until June 2, 2008, fifty-two days after the trial court's order. The Indiana Supreme Court has "considered perfecting a timely appeal a jurisdictional matter." *Claywell*

*v. Review Bd. of Ind. Dep't of Employment and Training Services,* 643 N.E.2d 330, 330 (Ind.1994). "The requirement of dismissal applies as well to appeals from interlocutory orders as to appeals from final judgments." 1A I.L.E. *Appeals* § 112 (2002) (relying upon *Standard Electric Mfg. Co. v. Tuttle,* 74 Ind.App. 559, 126 N.E. 438 (1920)).

Strictly construing Ind. Appellate Rule 14(A), we lack authority to exercise our appellate jurisdiction and we are unable to consider the merits of the City's arguments regarding venue.[4] *See Young v. Estate of Sweeney,* 808 N.E.2d 1217, 1221 (Ind.Ct.App.2004) (dismissing respondent's appeal and holding that "[b]ecause [the appellant's] notice of appeal was filed forty-five days after the interlocutory order was entered, Young's appeal is not properly before us pursuant to App. R. 14(A))"; *Bowyer v. Vollmar,* 505 N.E.2d 162, 165–167 (Ind.Ct.App.1987) (holding that appellant's argument that the trial court erred by denying his motion to transfer the case was waived because appellant failed to perfect the appeal within thirty days of the trial court's order), *reh'g denied, trans. denied.*

## II.

■ The next issue is whether the trial court abused its discretion by denying the City's motion for a preliminary injunc-

---

**4.** Even if we considered the City's arguments, we could not say that the trial court erred by denying the City's motion for change of venue from Marion County to Lake County. To the extent that the City argues that the trial court did not have subject matter jurisdiction because Majestic Star did not exhaust its administrative remedies, we conclude that Majestic Star is not seeking review or challenging the action of the Commission, and the portions of the Indiana Code and Administrative Code cited by the City do not provide the Commission with the authority to interpret contracts, which are matters for judicial determination.

*See Fratus v. Marion Cmty. Sch. Bd. of Trustees,* 749 N.E.2d 40, 46 (Ind.2001). To the extent the City argues that Majestic Star does not have standing to bring claims against the Commission because it has not indicated any controversy or threatened controversy between the Commission and Majestic Star, we reject the City's arguments because Majestic Star could not obtain relief from the City without also binding the Commission to the outcome and the Commission has an interest that would be affected by the declaratory judgment.

tion.[5] The grant or denial of a request for a preliminary injunction rests within the sound discretion of the trial court, and our review is limited to whether there was a clear abuse of that discretion. *Ind. Family and Soc. Servs. Admin. v. Walgreen Co.*, 769 N.E.2d 158, 161 (Ind.2002). When determining whether to grant a preliminary injunction, the trial court is required to make special findings of fact and state its conclusions thereon. *Barlow v. Sipes*, 744 N.E.2d 1, 5 (Ind.Ct.App.2001) (citing Ind. Trial Rule 52(A)), *trans. denied.* When findings and conclusions thereon are made, we must determine if the trial court's findings support the judgment. *Id.* We will reverse the trial court's judgment only when it is clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *CSX Transp., Inc. v. Rabold*, 691 N.E.2d 1275, 1277 (Ind.Ct. App.1998), *trans. denied.* We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment. *Barlow*, 744 N.E.2d at 5.

■■■ "The power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor." *Id.* The City requested a mandatory injunction seeking to compel Majestic Star to resume making the payments to the City under the development agreements and to cease depositing those payments into a segregated account.[6]

A mandatory injunction is an extraordinary equitable remedy which should be granted with caution. The plaintiff carries the burden of demonstrating injury which is certain and irreparable if the injunction is denied. In making its decision the trial court must weigh whether the plaintiff has an adequate remedy at law and the court must consider whether an injunction is in the public interest.

*Dible v. City of Lafayette*, 713 N.E.2d 269, 272 (Ind.1999) (quoting *Campbell v. Spade*, 617 N.E.2d 580, 583 (Ind.Ct.App.1993) (citations omitted)). *See also Crossmann Cmtys., Inc. v. Dean*, 767 N.E.2d 1035, 1040 (Ind.Ct.App.2002) ("Although the 'principles upon which mandatory and prohibitory injunctions are granted do not materially differ[, c]ourts are, however, more reluctant in granting the mandatory writ.'") (quoting *Schwartz v. Holycross*, 83 Ind.App. 658, 149 N.E. 699, 701–702 (1925)). "[B]efore ordering either declaratory or injunctive relief, a court is bound to consider alternate remedies available to the plaintiff." *Dible*, 713 N.E.2d at 272.

■■■ Generally, to obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that: (1) the movant's remedies at law were inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) it had at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) its threatened injury outweighed the potential harm to appellant resulting from the granting of an injunction; and (4) the public interest would not be disserved. *Walgreen*, 769 N.E.2d at 161. "If the movant

---

5. The Commission takes no position in the appeal regarding the trial court's denial of the City's motion for preliminary injunction.

6. A "mandatory injunction" is defined as "[a]n injunction that orders an affirmative act or mandates a specified course of conduct." BLACK'S LAW DICTIONARY 800 (8th ed.2004).

fails to prove any of these requirements, the trial court's grant of an injunction is an abuse of discretion." *Id.*

■■■■■ One purpose of a preliminary injunction is to prevent harm to the moving party that could not be corrected by a final judgment. *Crossmann Cmtys., Inc.,* 767 N.E.2d at 1042. As such, an injunction will not issue where the law can provide a full, adequate, and complete form of redress. *Id.* "A party suffering mere economic injury is not entitled to injunctive relief because damages are sufficient to make the party whole." *Walgreen,* 769 N.E.2d at 162. Although mere economic injury generally does not warrant the grant of an injunction, the trial court must determine whether the legal remedy is as full and adequate as the equitable remedy. *Crossmann Cmtys., Inc.,* 767 N.E.2d at 1041.

The City relies upon *Rees v. Panhandle Eastern Pipe Line Co.,* 176 Ind.App. 597, 610, 377 N.E.2d 640, 649 (1978), and *De-Mayo v. State ex rel. Dep't of Natural Res.,* 182 Ind.App. 241, 245, 394 N.E.2d 258, 261 (1979), which held that "when the acts sought to be enjoined have been declared unlawful or clearly are against the public interest, plaintiff need show neither irreparable injury nor a balance of hardship in his favor."

The City argues that Majestic Star thwarts the public policy behind riverboat gambling because withholding the payments will cause the City to cut essential programs that will affect the citizens' safety and livelihood. The City also argues that Majestic Star's withholding of the payments causes "far-reaching harm to the City that surpasses mere economic damages" and that the harm "affects the citizenry in ways that cannot be calculated or corrected with a later money judgment." Appellant's Brief at 13. Specifically, the City points to "restricting police and fire pensions, police overtime, the City's infrastructure (*e.g.,* road maintenance), and summer employment programs." *Id.* at 15. The City argues that the loss of the payments negatively impacts the City's ability to "meet a myriad of obligations vital to the well-being of its citizens—including liquidity loans to the City employee's pension fund, loan repayment, the City's contribution to the Regional Development Authority, street and sidewalk repairs, bond payments, subsidies to the City's General Fund, the City's summer hiring program and interfund loans." *Id.* at 20.

We cannot say that Majestic Star's actions are *clearly* against the public interest. The City's alleged damages are merely speculative. Other options, such as issuing bonds, exist for the City instead of cutting essential services. Majestic Star's actions of making payments to a segregated, interest-bearing account rather than directly to the City during the pendency of this action are not "clearly" against the public interest. Thus, we conclude that the rule pronounced in *Rees* is not applicable.

Further, because Majestic Star is depositing the payments into a segregated, interest-bearing bank account, and the City has the capacity to issue general obligation bonds,[7] we conclude that the City failed to demonstrate an inadequate remedy at law,

7. The record reveals that the City has the capacity to issue general obligation bonds, that the Council approved revenue bonds in the amount of $25 million, and that the City used only $4.8 million. While the Controller for the City testified that the City used only $4.8 million because the City did not want to "over-obligate," we conclude that the City has the option to issue bonds to make up for any shortfall created by the withholding of the payments by Majestic Star. Transcript at 157.

thus causing irreparable harm pending resolution of the substantive action. The City's damages are purely economic injuries and the legal remedy is as full and adequate as the equitable remedy. Accordingly, we conclude that the trial court did not abuse its discretion by denying the City's motion for preliminary injunction. *See T.H. Landfill Co., Inc. v. Miami County Solid Waste Dist.*, 628 N.E.2d 1237, 1239 (Ind.Ct.App.1994) (holding that the movant was not entitled to a preliminary injunction because the movant's claim involved merely economic injury and it had an adequate remedy at law).

In summary, we conclude that we lack authority to exercise our appellate jurisdiction in considering the merits of the City's arguments regarding venue. We also conclude that the trial court did not abuse its discretion by denying the City's motion for preliminary injunction because the City has an adequate alternate remedy.

For the foregoing reasons, we dismiss the appeal from the order denying the City's motion for change of venue and affirm the trial court's denial of the City's motion for a preliminary injunction.

Dismissed in part, and affirmed in part.

BRADFORD, J., concurring in part and concurring in result with separate opinion.

CRONE, J., concurring in part and concurring in result in part with separate opinion.

BRADFORD, Judge, concurring in part and concurring in result.

I fully concur in the result and concur with Judge Brown as to Issue I. As to Issue II, I agree with Judge Crone to the extent the arbitration clause provides the City an alternate remedy at law and therefore conclude the trial court did not abuse its discretion in denying the City's request for a preliminary injunction. That being the case, I do not believe it is necessary to address the parties' arguments further.

CRONE, Judge, concurring in part and concurring in result in part.

 I fully concur with respect to issue I. As for issue II, I agree with the majority's conclusion that the trial court did not abuse its discretion in denying the City's motion for a preliminary injunction, but I respectfully disagree with its rationale in several respects.

First, I do not believe that we should consider the City's ability to issue bonds in assessing the nature and extent of its alleged damages and the availability of alternate remedies. Decisions regarding how and where municipal funds are raised and allocated are both incredibly complicated and inherently within the province of the legislative and executive branches. Only rarely should the judiciary intervene in such matters, and I believe that we should refrain from serving as the City's de facto budget director in this case.

Second, I do not believe that the City's alleged damages are merely economic. The City notes that the loss of Majestic Star's payments "prevents the City from paying overtime for police officers, firefighters, and garbage pick-up[,]" as well as impedes its payment of medical insurance claims and police and fire pension obligations. Appellant's Br. at 9. Likewise, the loss of Majestic Star's payments will negatively affect the City's ability to fund various infrastructure and social service projects. The City points out that if it ultimately prevails in this action, its citizens cannot be made whole by, for example, having twice the additional security at future events. Nor will a victim of a crime during any period of reduced overtime have a claim that can be satisfied by Majestic Star. A municipality simply cannot be compensated for lost

revenue in the same manner that a for profit corporation like Majestic Star can be.

*Id.* at 15.

Third, in light of its negative impacts on the welfare of the City's residents, I believe that Majestic Star's withholding of its payments to the City is clearly against the public interest.

That being said, I find it significant that the 1996 Majestic Development Agreement contains an arbitration clause, which reads in pertinent part as follows:

> In the event that [sic] any controversy or claim, except those pertaining to any default set forth in Section 5.01 [not applicable here], the controversy or claim shall be settled by binding arbitration at Indianapolis, Indiana, in accordance with the rules of the American Arbitration Association, and judgment on the award may be entered in any court having jurisdiction thereof.

Appellant's App. at 123. The record indicates that the arbitration clause has not been affected by any subsequent amendment to the agreement. Thus, not only does the City have an alternate remedy, but it also specifically agreed to avail itself of that remedy in the event of a controversy with Majestic Star. For that reason, I conclude that the trial court did not abuse its discretion in denying the City's request for a preliminary injunction. Therefore, I respectfully concur in result as to this issue.