**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**





FILED

Sep 11 2012, 9:07 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**JULIA BLACKWELL GELINAS**
**MELANIE D. MARGOLIN**
**JOSHUA B. FLEMING**
**DARREN A. CRAIG**
Frost Brown Todd, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**MICHAEL H. MICHMERHUIZEN**
**ANTHONY M. STITES**
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ZIMMER, INC. and ZIMMER DENTAL, INC., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No.  02A03-1112-CT-548 |
| | ) | |
| JASON YOUNG, RENAE SALVITTI, and IMPLANT DIRECT SYBRON MANUFACTURING, LLC, d/b/a IMPLANT DIRECT SYBRON INTERNATIONAL, | ) ) ) ) ) | |
| | ) | |
| Appellees. | ) | |

### APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Nancy E. Boyer, Judge
Cause No.  02D01-1107-CT-366

**September 11, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Senior Judge**

<u>STATEMENT OF THE CASE</u>

Zimmer, Inc. ("Zimmer") and Zimmer Dental, Inc. ("Zimmer Dental") sued two former sales representatives, Jason Young ("Young") and Renae Salvitti ("Salvitti") and their new employer, Implant Direct Sybron Manufacturing, LLC d/b/a Implant Direct Sybron International ("Implant Direct") and sought a preliminary injunction seeking to enjoin Young and Salvitti from violating the terms of their employment agreements, which contained non-disclosure, non-competition, and non-solicitation provisions. The parties entered into an agreed order, agreeing to the entry of a preliminary injunction enjoining Young and Salvitti from violating the terms of their employment agreements pending trial. The trial court adopted this agreed order but denied Zimmer Dental's request for additional injunctive relief against the parties. Zimmer Dental now files this interlocutory appeal challenging the trial court's denial of its request for additional injunctive relief.[1]

We affirm.

<u>ISSUE</u>

Whether the trial court abused its discretion by denying Zimmer Dental's request for additional injunctive relief against Young, Salvitti, and Implant Direct.

---

[1] We reject Implant Direct's argument that Zimmer Dental cannot appeal the trial court's denial of its request for additional injunctive relief. *See* Ind. Appellate Rule 14(A)(5) (explaining that an interlocutory appeal as a matter of right may be taken from an order refusing to grant a preliminary injunction).

FACTS

Zimmer, the parent corporation, is a Delaware Corporation with its principal place of business in Indiana. Zimmer Dental, which is a division of Zimmer, is a Delaware Corporation with its principal place of business in California. Zimmer Dental designs, manufactures, markets, and distributes dental implants and related products.

Salvitti, who lives in Pennsylvania, began her employment with Zimmer Dental in May 2003. Young, who lives in Pennsylvania, started his employment with Zimmer Dental in July 2007. Both worked for Zimmer Dental as sales representatives, which required them to sell Zimmer Dental products in an assigned geographic area. Salvitti's assigned geographic territory for Zimmer Dental included "Pittsburgh south" while Young's geographic territory for Zimmer Dental included "Pittsburgh north." (Tr. 52).

Annually, with the exception of 2011, both Young and Salvitti signed a Zimmer Dental Confidentiality, Non-Competition, and Non-Solicitation Agreement for Sales Managers and Representatives ("Zimmer Dental Employment Agreement"). In relevant part, Young's and Salvitti's 2010 Zimmer Dental Employment Agreements provided:

> A.    For purposes of this Agreement, the term "Company" means Zimmer Dental Inc. . . .

* * * * *

> 2.    **Non-Disclosure and Ownership of Confidential Information**. Employee acknowledges that Confidential Information is a valuable, special, and unique asset of Company, and solely the property of Company, and agrees to the following:

3

\* \* \* \* \*

(b) <u>Non-Disclosure of Confidential Information</u>. During Employee's employment with Company and thereafter, Employee will not disclose, transfer, or use (or seek to induce others to disclose, transfer, or use) any Confidential Information for any purpose . . . Employee's non-disclosure obligations shall continue as long as the Confidential Information remains confidential and shall not apply to information that becomes generally known to the public through no fault or action of Employee.

\* \* \* \* \*

4.    **<u>Return of Confidential Information and Company Property</u>**. Immediately upon termination of Employee's employment with Company, Employee shall return to Company all of Company's property relating to Company's business, including Company's property which is in the possession, custody, or control of Employee such as Confidential Information, documents, hard copy files, copies of documents and electronic information/files.

\* \* \* \* \*

7.    **<u>Restrictive Covenants</u>**. Employee agrees to, and covenants to comply with, each of the following separate and divisible restrictions:

(a) Definitions.

\* \* \* \* \*

(4) "Restricted Geographic Area" is defined as any geographic territory assigned to Employee during Employee's last two years of employment with Company.

(5) "Restricted Period" is defined as the date Employee executes this Agreement, continuing through the eighteen (18) months after the Employee's last day of employment with Company unless otherwise extended by Employee's breach of this Agreement . . . .

(b) Restrictive Covenants. During the Restricted Period, Employee agrees to be bound by each of the following independent and divisible restrictions:

4

(1) <u>Covenant Not to Compete</u>

     (A) Employee will not, *within the Restricted Geographic Area*, be employed by, work for, consult with, provide services to, or lend assistance to any Competing Organization in a Prohibited Capacity.

* * * * *

     (2) <u>Covenant Not to Solicit Customers or Active Prospects</u>. Employee will not i) provide, sell, or market; ii) assist in the provision, selling or marketing of; or iii) attempt to provide, sell or market any Competing Products to any of Company's Customers or Active Prospects *in the Restricted Geographic Area*.

* * * * *

     (4) <u>Covenant Not to Solicit Company Employees</u>. Employee will not employ, solicit for employment, or advise any other person or entity to employ or solicit for employment, any individual employed by Company at the time of Employee's separation from Company employment, or otherwise induce or entice any such employee to leave his/her employment with Company to work for, consult with, provide services to, or lend assistance to any Competing Organization.

     (5) <u>Covenant Not to Disparage Company</u>. Employee will not make or publish any disparaging or derogatory statements about Company; about Company's products, processes, or services; or about Company's past, present and future officers, directors, employees, attorneys and agents . . . .

(Exs. 5, 35) (emphasis added).[2]

On June 4, 2011, Young attended a dental conference in Pennsylvania on Salvitti's behalf due to the recent death of her mother-in-law. During this conference, Young had a conversation with Keith Johnson, a sales representative for Implant Direct, which is a

---

[2] Some exhibits in this case, including Salvitti's and Young's Zimmer Dental Employment Agreements, have been filed as confidential; however, both parties cite to them in their appellate briefs. This court's opinion provides only the portion of the Zimmer Dental Employment Agreements that are deemed essential to the resolution of the case. *See* Ind. Administrative Rule 9(G)(3), (4)(d).

competitor of Zimmer Dental. Johnson informed Young that Implant Direct was planning to add local sales representatives to the Pittsburgh area. The following day, Young informed Salvitti about Implant Direct adding local sales representatives. On June 6, 2010, Salvitti contacted Dr. Gerald Niznick, President of Implant Direct,[3] to ask about the Pennsylvania sales positions. Thereafter, Salvitti and Niznick exchanged emails regarding the possibility of Salvitti and Young joining Implant Direct as sales representatives.

After phone conversations with various Implant Direct sales executives, including Michael Kennedy and Joseph Campbell, as well as providing Implant Direct with a copy of the Zimmer Dental Employment Agreements and a list of the assigned zip codes in their Zimmer Dental geographic sales territories, Salvitti and Young were eventually hired as outside sales representatives by Implant Direct. During their conversations with Campbell, he clarified to them that they were being hired for their sales abilities and not for their Zimmer Dental customer contacts. Campbell also emphasized to Salvitti and Young that, for the duration of their non-competition agreement with Zimmer Dental, they would be required to cover a different geographic territory than the one they worked while at Zimmer Dental.

Implant Direct took steps to ensure that Salvitti and Young complied with their non-competition agreements by crafting a new sales territory for each of them that

---

[3] Niznick owned the company that eventually became Zimmer Dental but sold that company in 2001.

6

excluded all zip codes that they served in their Zimmer Dental geographic territories.[4] Their offers of employment from Implant Direct specifically provided, in relevant part: "**You are specifically precluded from contacting or soliciting sales from Zimmer Dental Customers or Prospective Customers within the Territory you were assigned to sell Zimmer Dental products, for the two year period, prior to coming to work for Implant Direct Sybron International; said territory is defined in Attachment "B".**" (Ex. 22 at 2; Ex. 42 at 2). Implant Direct repeatedly instructed Salvitti and Young not to bring confidential information of Zimmer Dental into Implant Direct. Implant Direct also instructed Salvitti and Young not to share with each other any Zimmer Dental customer information regarding their previous Zimmer Dental territories.

Young and Salvitti ended their employment with Zimmer Dental on July 13 and 14, 2011, respectively and started employment with Implant Direct on July 19, 2011. On July 17, 2011, before returning her Zimmer Dental computer to Zimmer Dental, Salvitti downloaded her Zimmer Dental hard drive onto a USB drive. Salvitti accessed her USB on her personal computer and later on her Implant Direct computer. Young also downloaded some Zimmer Dental information before he returned his Zimmer Dental equipment. Specifically, Young downloaded expense reports for use in preparing his

---

[4] Salvitti's sales territory for Implant Direct included zip codes contained in Young's former Zimmer Dental Restricted Geographic Area plus additional territory not covered while they were at Zimmer Dental, while Young's sales territory for Implant Direct included zip codes from Salvitti's prior Zimmer Dental Restricted Geographic Area and more. Both Salvitti's and Young's new Implant Direct territories were twice the size of their prior Zimmer Dental sales territories.

taxes and a customer list because he "was looking for something for [his] brag book[5] to show proof that [he] was successful at Zimmer [Dental]." (Tr. 272). Young deleted the list and did not show it to Implant Direct.

On July 22, 2011, Zimmer Dental filed a Complaint for Preliminary Injunction, Permanent Injunction, and Damages ("Complaint") against Young, Salvitti, and Implant Direct.[6] Zimmer Dental alleged, among other things, that Young and Salvitti had breached their contracts by going to work for Implant Direct and that Implant Direct had tortiously interfered with Young's and Salvitti's contracts. Zimmer Dental sought to enjoin Young and Salvitti from: (1) working for a direct competitor of Zimmer Dental in his or her Restricted Geographic Area as well as the Restricted Geographic Area of each other; (2) contacting any Zimmer Dental customer that Young or Salvitti had served during his or her employment with Zimmer Dental; (3) inducing other Zimmer Dental employees to terminate employment with Zimmer Dental; (4) disclosing Zimmer Dental's confidential information, including customer information, to another person or corporation; and (5) making disparaging statements about Zimmer Dental.

After this litigation had commenced, the parties jointly hired Mirror Consulting—a company that specializes in electronic discovery and digital forensics—for discovery purposes. Mirror Consulting examines, extracts, and preserves information off of

_____

[5] A "brag book", common in the sales industry, is a binder containing documents to show that a sales person's ranking and that he or she has had "successes" and has "reached [his or her] numbers." (Tr. 391).

[6] Salvitti's and Young's Zimmer Dental Employment Agreements contained a provision that the construction and enforcement of the Employment Agreements would be governed by Indiana law and that the parties would submit to jurisdiction in Indiana.

8

computers, cell phones, and other electronic devices. Young sent his USB drive, and Salvitti sent her USB drive, personal computer, and her Implant Direct computer to Mirror Consulting for investigation.

On October 4, 2011, the day of the preliminary injunction hearing, the parties—using the language and definitions contained in Young's and Salvitti's Zimmer Dental Employment Agreements—entered into an Agreed Order, in which they agreed to the entry of a preliminary injunction pending trial and agreed to enjoin Young and Salvitti from violating the terms of their Zimmer Dental Employment Agreements. Specifically, the parties agreed that:

(1) Young and Salvitti [would] not, within their respective Restricted Geographic Areas, be employed by, work for, consult with, provide services to, or lend assistance to Implant Direct[;]

(2) Young and Salvitti [would] not (i) provide, sell, or market; (ii) assist in the provision, selling or marketing of; or (iii) attempt to provide, sell or market any Competing Products to any of [Zimmer Dental's] Customers or Active Prospects in the respective Restricted Geographic Areas.

(3) Young and Salvitti will not employ, solicit for employment, or advise any other person or entity to employ or solicit for employment, any individual employed by [Zimmer Dental] at the time of Young and Salvitti's separation from [Zimmer Dental] employment, or otherwise induce or entice any such employee to leave his/her employment with [Zimmer Dental] to work for, consult with, provide services to, or lend assistance to any Competing Organization.

(4) Young and Salvitti [would] not knowingly make any false statements of material fact about [Zimmer Dental]; about [Zimmer Dental's] products, processes, or services; or about [Zimmer Dental's] past, present and future officers, directors, employees, attorneys and agents.

(5) Young and Salvitti shall destroy or return, at [Zimmer Dental's] option, any and all Confidential Information belonging to [Zimmer Dental] in their possession and remove and delete any Confidential Information that Young

9

and Salvitti possess in electronic form and provide written verification to [Zimmer Dental] that they have done so; and they shall not possess, use, or disclose such Confidential Information.

(Zimmer Dental's App. at 97).

At the beginning of the preliminary injunction hearing, Zimmer Dental informed the trial court that they were requesting injunctive relief beyond what was agreed upon in the Agreed Order and beyond what was contained in Young's and Salvitti's Zimmer Dental Employment Agreements. Specifically, Zimmer Dental sought to enjoin Young and Salvitti from working in the Restricted Geographic Area that the other had served when employed by Zimmer Dental. As for an injunction against Implant Direct, Zimmer Dental sought, in part, to order Implant Direct to submit its computer system to a third party to search for and delete any Zimmer Dental confidential information.

After taking a break and prior to Zimmer Dental calling its first witness, the attorneys for the parties informed the trial court that their stipulation in the Agreed Order included the agreement that Salvitti would return her Implant Direct computer to Mirror Consulting "and any Zimmer [Dental] information on it w[ould] be, pending litigation, scrubbed and stripped." (Tr. 31). The attorneys indicated that they did not have a "protocol work[ed] out, but [they would] do that on the side." (Tr. 31).

During the preliminary injunction hearing Rebecca Hendricks, president of Mirror Consulting, testified that she had made mirror images of the hard drives of the devices submitted to her from Young and Salvitti. Hendricks made a file list from the devices and analyzed them, pursuant to the path name searches agreed to by the parties, to see what files were accessed on or after July 19, 2011. Hendricks testified that the parties

10

had not yet requested that she pull up the content of any document that may have been accessed.

On November 18, 2011, the trial court entered an order denying Zimmer Dental's request for additional injunctive relief against Salvitti and Young beyond what it received as part of the Agreed Order and denied its request for injunctive relief against Implant Direct. The trial court's findings and conclusions provide, in part:

## FINDINGS OF FACT

* * * * *

31. Young has not worked for or sold products for Implant Direct in the territory to which he had been assigned during his last two years of employment with Zimmer Dental and has not lent assistance in his former territory to any Implant Direct employee.

32. Salvitti has not worked for or sold products for Implant Direct in the territory to which she had been assigned during her last two years of employment with Zimmer Dental and has not lent assistance in her former territory to any Implant Direct employee.

* * * * *

37. Young has not used, or disclosed to Implant Direct, any Zimmer Dental confidential information, and Implant Direct has not requested or required Young use or disclose the information.

* * * * *

39. Although Salvitti accessed information on her USB flash drive during the week-long training session she attended when she began working for Implant Direct, no evidence was presented to show that Salvitti used or disclosed the information on these files to, or in connection with, her job at Implant Direct. Further, no evidence was presented as to what portion of the files were accessed or for how long.

40. Rebecca Hendricks, President of Mirror Consulting, a digital forensic company, testified that if a power point were opened and several files were embedded in the presentation, her report would demonstrate that all of the embedded files had been accessed whether or not they were. She

11

could not testify to the time of access, what part of the file was accessed, or how long the file was accessed.

41. None of the files that were accessed were produced at the Preliminary Injunction hearing.

42. Salvitti has not used, or disclosed to Implant Direct, any Zimmer Dental confidential information, including the files downloaded on to the USB drives, in connection with the performance of her Implant Direct job responsibilities. Implant Direct has not requested or required Salvitti use or disclose that information.

43. Representatives of Implant Direct testified that they did not want or need confidential information of Zimmer Dental. They have not sought confidential information from Young and/or Salvitti, and they have not received any confidential information regarding Zimmer Dental.

44. Zimmer Dental failed to present any testimony or other evidence that Young and/or Salvitti had provided any confidential information to Implant Direct.

\* \* \* \* \*

## CONCLUSIONS OF LAW

\* \* \* \* \*

The Court cannot enjoin Young or Salvitti from working in an area other than their former territory under the [Employment] Agreement, so the Court must determine whether there is any other basis for enjoining them.

The Agreements purport to prohibit Young and Salvitti from working for a competitor in the "Restricted Geographic Area," which is defined as the geographic territory assigned to an employee during the employee's last two years of employment with the Company. The parties have agreed to an Order enjoining Young and Salvitti from being so employed and the Court need not determine whether that provision is reasonable. However, the Court may not enjoin Young and Salvitti beyond the express terms of their [Employment] Agreements. To do so would be to rewrite the parties' agreements.

Zimmer Dental argues that the Court can only give Zimmer the benefit of its non-compete bargain by enjoining both Young and Salvitti from working in any territory served by either of them. The Court cannot give the parties the benefit of their bargain by enforcing terms to which the

parties never agreed. The Agreed Order gives Zimmer the benefit of its non-compete bargain.

The Court may not award injunctive relief unless Zimmer Dental has proven that it has suffered irreparable harm.

Irreparable harm is harm that cannot be compensated by damages through the resolution of the underlying action. By virtue of the Agreed Order, the Court has granted any injunctive relief that Zimmer Dental might have otherwise be[en] entitled to under the Agreements.

Zimmer Dental failed to present any evidence that Young or Salvitti shared any confidential information of Zimmer Dental with Implant Direct. Zimmer Dental failed to present any evidence that Young or Salvitti used any confidential information of Zimmer Dental to make a sale or solicit a customer of Zimmer Dental. Zimmer Dental failed to present any evidence that Young or Salvitti while employed by Implant Direct solicited a customer that they had served while at Zimmer Dental.

* * * * *

Zimmer Dental failed to present any evidence that Implant Direct sought or received any confidential information of Zimmer Dental. Representatives of Implant Direct affirmatively testified that they did not receive or want any of Zimmer Dental's information.

At all times, Implant Direct repeatedly instructed Young and Salvitti to abide by their non-competition agreements and took proactive steps to assure compliance.

Zimmer Dental failed to present any evidence to support the granting of an injunction against Implant Direct.

(App. 23-24, 26-27) (internal case citations omitted). Zimmer Dental now appeals the trial court's denial of its request for additional injunctive relief.[7]

---

[7] Pursuant to an order granting Zimmer Dental's motion, the trial court stayed the proceedings pending this appeal.

13

DECISION[8]

Zimmer Dental asserts that the trial court abused its discretion by denying its request for additional preliminary injunctive relief.

> To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that: (1) the moving party's remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) the moving party has at least a reasonable likelihood of success on the merits at trial by establishing a prima facie case; (3) the threatened injury to the moving party outweighs the potential harm to the non-moving party resulting from the granting of the injunction; and (4) the public interest would not be disserved. The moving party must prove each of these requirements to obtain a preliminary injunction. If the moving party fails to prove even one of these requirements, the trial court's grant of an injunction is an abuse of discretion.

> A party appealing from the trial court's denial of an injunction appeals from a negative judgment and must demonstrate that the trial court's judgment is contrary to law; that is, the evidence of record and the reasonable inferences drawn therefrom are without conflict and lead unerringly to a conclusion opposite that reached by the trial court. We cannot reweigh the evidence or judge the credibility of any witness. Further, while we defer substantially to the trial court's findings of fact, we evaluate questions of law *de novo.*

> The grant or denial of a preliminary injunction is within the sound discretion of the trial court, and the scope of appellate review is limited to deciding whether there has been a clear abuse of discretion. When determining whether to grant a preliminary injunction, the trial court is required to make special findings of fact and state its conclusions thereon. When findings and conclusions are made, the reviewing court must determine if the trial court's findings support the judgment. The trial court's judgment will be reversed only when clearly erroneous. Findings of fact are clearly erroneous when the record lacks evidence or reasonable

---

[8] Before we address Zimmer Dental's issue on appeal, we note that resolution of this case "required much separating of the wheat from the chaff inserted by both parties in their briefs." *See Oxford Fin. Grp., Ltd. v. Evans*, 795 N.E.2d 1135, 1139 (Ind. Ct. App. 2003). The parties devoted portions of their briefs addressing arguments not relevant to the narrow issue in this case of whether Zimmer Dental had met its burden of showing the four requirements necessary to obtain preliminary injunctive relief beyond the preliminary injunction that was already entered as part of the Agreed Order.

inferences from the evidence to support them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment.

*Zimmer, Inc. v. Davis*, 922 N.E.2d 68, 71 (Ind. Ct. App. 2010) (internal citations and quotations omitted).

Here, the parties voluntarily entered into an Agreed Order in which they agreed to the entry of a preliminary injunction and agreed that Young and Salvitti would be enjoined from violating the terms of their Zimmer Dental Employment Agreements pending trial. Specifically, in relevant part, the parties agreed that Young and Salvitti would not work for Implant Direct in their Restricted Geographic Area and would not assist others in their Restricted Geographic Area. Zimmer Dental, however, sought additional injunctive relief beyond the relief contained in the parties Agreed Order. Specifically, it sought: (A) a prohibitory injunction[9] against Salvitti and Young, seeking to enjoin them from working in the Restricted Geographic Area that the other had served when employed by Zimmer Dental; and (B) a mandatory injunction[10] against Implant Direct, seeking to compel Implant Direct to submit its computer system to a third party to search for and delete any Zimmer Dental confidential information. We will discuss each in turn.

A. <u>Preliminary Injunction Against Salvitti and Young</u>

---

[9] A prohibitory injunction is an injunction that orders a party to refrain from doing something. *See Field v. Area Plan Comm'n of Grant County, Ind.*, 421 N.E.2d 1132, 1141 (Ind. Ct. App. 1981).

[10] A mandatory injunction is an injunction that "'orders an affirmative act or mandates a specified course of conduct.'" *City of Gary, Indiana v. Majestic Star Casino, LLC*, 905 N.E.2d 1076, 1082 n.6 (Ind. Ct. App. 2009) (quoting Black's Law Dictionary 800 (8th ed. 2004)), *trans. denied*.

On appeal, Zimmer Dental argues that the trial court erred by failing to enjoin Young from working in Salvitti's prior Restricted Geographic Area and by failing to enjoin Salvitti from working in Young's prior Restricted Geographic Area.

As part of its burden to succeed on its request for this additional injunctive relief, Zimmer Dental was required to demonstrate that its "remedies at law were inadequate, thus causing irreparable harm pending resolution of the substantive action." *Ind. Fam. and Soc. Serv. Admin. v. Walgreen Co.*, 769 N.E.2d 158, 162 (Ind. 2002). "If an adequate remedy at law exists, injunctive relief should not be granted." *Id.* "A party suffering mere economic injury is not entitled to injunctive relief because damages are sufficient to make the party whole." *Id.*

Zimmer Dental contends that it met its burden of proving irreparable harm. Specifically, Zimmer Dental argues that it "faces substantial, irreparable harm if Young and Salvitti continue using and disclosing Zimmer's confidential information and assisting Implant Direct in soliciting Zimmer's customers and active prospects for business." Zimmer Dental's Br. at 26. Thus, Zimmer Dental contends that it has established irreparable harm based on its allegation that Salvitti and Young breached their respective Zimmer Dental Employment Agreements by using and disclosing confidential information for their own benefit and the benefit of Implant Direct.

Zimmer Dental's contention amounts to nothing more than an argument that it should be granted equitable relief beyond the preliminary injunction already granted as part of the Agreed Order based on its assertion that it will suffer irreparable harm if both Young and Salvitti are not enjoined from working in the geographic area included in the

16

other's Zimmer Dental Employment Agreement. But, here, Young and Salvitti do not violate their Zimmer Dental Employment Agreements simply by working in geographic areas that were not assigned to them in their respective Zimmer Dental Employment Agreements. Indeed, to enjoin Young and Salvitti from working in a geographic region not contained in their respective Zimmer Dental Employment Agreements would be to extend the express terms of their non-competition agreements contained therein, which we have previously explained we will not do. *See Oxford*, 795 N.E.2d at 1146 ("'[I]n any situation, non-competition agreements . . . will never be extended beyond the express terms of the agreement.'") (quoting *Franke v. Honeywell, Inc.*, 516 N.E.2d 1090, 1092–93 (Ind. Ct. App. 1987), *trans. denied*).

Furthermore, Zimmer Dental's contention that it met its burden of showing irreparable harm based on Young's and Salvitti's disclosure of confidential information is also without merit. Here, the trial court specifically found that Young and Salvitti had neither used nor disclosed any Zimmer Dental confidential information to Implant Direct. Zimmer Dental makes no argument that the trial court's findings are erroneous. Thus, Zimmer Dental's assertion that Young and Salvitti disclosed confidential information amounts to nothing more than a request to reweigh evidence, which we cannot do. *See Zimmer*, 922 N.E.2d at 71.

Finally, Zimmer Dental has not shown irreparable harm to its business pending the determination of this case on its merits. *See AGS Capital Corp., Inc. v. Product Action Intern., LLC*, 884 N.E.2d 294, 314 (Ind. Ct. App. 2008) (explaining that a party seeking a preliminary injunction is required to show irreparable harm to its business in order to

17

meets its burden of proving that its remedies at law are inadequate), *trans. denied.* Because Zimmer Dental failed to prove irreparable harm, we conclude that the trial court did not abuse its discretion by denying Zimmer Dental's request for additional preliminary injunctive relief against Young and Salvitti. *See Zimmer*, 922 N.E.2d at 74 (affirming the trial court's denial of an employer's request for preliminary injunction against a former employee where the employer failed to meet its burden on one of the four requirements of a preliminary injunction).

B. Preliminary Injunction Against Implant Direct

Zimmer Dental also argues that the trial court erred by failing to grant its request for additional injunctive relief. Specifically, Zimmer Dental contends that the trial court erred by failing to order Implant Direct to submit its computer systems to a third party to search for and delete any Zimmer Dental confidential information.[11]

As noted above, Zimmer Dental's request for injunctive relief against Implant Direct was a request for a mandatory injunction, which is an injunction that orders a party to take action. *See Majestic Star Casino*, 905 N.E.2d at 1082 n.6. Such an injunction "is an extraordinary equitable remedy [that] should be granted with caution." *Id.* at 1082. *See also Crossmann Cmtys., Inc. v. Dean*, 767 N.E.2d 1035, 1040 (Ind. Ct. App. 2002) (explaining that "[a]lthough the principles upon which mandatory and prohibitory

---

[11] We reject Implant Direct's various contentions that this argument is not available to Zimmer Dental on appeal because Zimmer Dental did not request such relief. The record before us reveals that Zimmer Dental requested such injunctive relief but that the trial court denied it.

Additionally, we note that, at the preliminary injunction hearing, Zimmer Dental also requested that Implant Direct be enjoined from using, disclosing, and possessing Zimmer Dental confidential information. Zimmer Dental, however, makes no specific argument regarding the trial court's denial of its request for this specific injunctive relief.

18

injunctions are granted do not materially differ[, c]ourts are, however, more reluctant in granting the mandatory writ") (citation and internal quotation marks omitted). A party seeking a such an injunction "carries the burden of demonstrating injury [that] is certain and irreparable if the injunction is denied." *Majestic Star Casino*, 905 N.E.2d at 1082.

Zimmer Dental argues that the trial court should have granted its request for a preliminary injunction against Implant Direct because the evidence shows that Salvitti "accessed Zimmer Dental's confidential information from at least one Implant Direct computer." Zimmer Dental's Br. at 28.

While the record before us reveals that Salvitti accessed Zimmer Dental files contained on her USB on an Implant Direct computer, the record also indicates that Salvitti submitted her Implant Direct computer to the jointly hired computer expert at Mirror Consulting for discovery purposes. During the preliminary injunction hearing, Hendricks of Mirror Consulting testified that she had a mirror image of the hard drive of Salvitti's computer and had analyzed it, based on dates and path name searches agreed to by the parties, to see what files had been accessed. Hendricks also testified that the parties had not yet requested her to provide the content of any document that may have been accessed. Additionally, the parties stipulated that Salvitti would return her Implant Direct computer to Mirror Consulting pending litigation.

Based on the evidence presented during the preliminary injunction hearing, the trial court found that Young and Salvitti did not disclose any Zimmer Dental confidential information to Implant Direct and that Implant Direct did not seek or have any confidential information regarding Zimmer Dental. Again, Zimmer Dental does not

19

specifically challenge these trial court's findings as erroneous. Indeed, Zimmer Dental makes no allegation or argument that it met the four requirements necessary for the trial court to grant the preliminary injunctive relief requested against Implant Direct. Zimmer Dental has failed to demonstrate that the trial court's judgment is contrary to law. Therefore, the trial court did not abuse its discretion by denying Zimmer Dental's request for preliminary injunctive relief against Implant Direct.[12]

## **CONCLUSION**

Zimmer Dental has failed to demonstrate an abuse of discretion in the trial court's denial of it request for additional injunctive relief against Young, Salvitti, and Implant Direct. Thus, we affirm the trial court's order denying Zimmer Dental's request for preliminary injunctive relief beyond the Agreed Order.

Affirmed.

RILEY, J., and NAJAM, J., concur.

---

[12] Aside from the parties working together on the entry of the Agreed Order, it is clear from the record before us that the parties have worked together on discovery issues relating to Zimmer Dental's confidential information. We commend the parties for their efforts to work together to conduct discovery issues and encourage them to continue to do so as they move to trial in this case.